UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SPENCER W. ALPERT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-2095-B |
| | § | |
| BAC HOME LOANS SERVICING, LP, | § | |
| et al., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Amended Motion to Enforce Mediated Settlement Agreement (doc. 49), filed April 18, 2011, and Plaintiff's First Motion for Extension of Time to Submit Final Papers and to Deny Defendants' Motion to Enforce Mediation Agreement (doc. 51), filed April 19, 2011. The Court held a hearing on these Motions on May 5, 2011. As the Court noted on the record at that hearing, the Court finds, based on the parties' representations in their papers and at the hearing, that further extension of the deadline to submit final papers is improper, and accordingly Plaintiff's Motion for Extension of Time (doc. 51) is hereby **DENIED**. As to Defendants' Motion to Enforce Mediated Settlement Agreement, the Court finds that the Motion should be and hereby is **GRANTED**.

In considering Defendants' Motion, the Court must first determine whether the parties entered a valid mediated settlement agreement. *See Weaver v. World Fin. Corp. of Tex.*, No. 3:09-CV-1124-G, 2010 WL 1904561, at *1 (N.D. Tex. May 12, 2010). In cases where jurisdiction is based on the parties' diversity of citizenship, the Court applies the law of the state where the

mediated settlement agreement is negotiated and where it is to be performed. *Id.* (citing *Lockette v. Greyhound Lines, Inc.*, 817 F.2d 1182, 1185 (5th Cir. 1987)). Here, the agreement was negotiated in Texas, and the properties that are the subject of the suit are located in Texas as well, so the Court applies Texas law. (*See* Rule 11 and Settlement Agreement ¶ 9, Defs.' App. in Supp. of 3d Unopposed Mot. Extend Time Ex. A-1). Under Texas law, a settlement agreement is only enforceable if it is "in writing [and] signed by and filed with the papers as part of the record." *Weaver*, 2010 WL 1904561, at *1 (quoting TEX. R. CIV. P. 11). Here, the parties' written, signed mediated settlement agreement has been filed under seal in the record. (*See* Ex. A to Rule 11 and Settlement Agreement, Defs.' App. in Supp. of 3d Unopposed Mot. Extend Time Ex. A-1). The parties do not dispute the existence of the written and signed mediated settlement agreement.

Having determined that the parties entered an enforceable mediated settlement agreement, the Court next turns to whether it should enforce the agreement and, if so, the appropriate means of enforcement. *See Weaver*, 2010 WL 1904561, at *2. A federal district court may enforce a settlement agreement arising out of a case currently pending before it. *Id.* (citing *Bell v. Shexnayder*, 36 F.3d 447, 449 (5th Cir. 1994)). Whether to enforce the agreement, is within the sound discretion of the presiding judge. *Id.* (citing *Deville v. United Sates ex. rel. Dept' of Veterans Affairs*, 202 F. App'x 761, 762 (5th Cir. 2006)). This is true where, as here, a party agrees to an initial mediated settlement agreement but later refuses to sign a formal agreement adopting the terms of that initial mediated settlement agreement. *See id.* (citing *Daftary v. Metro. Life Ins. Co.*, 136 F.3d 137, 1998 WL 30059, at *1 (5th Cir. Jan. 12, 1998) (per curiam)).

By entering the Mediated Settlement Agreement, the parties agreed to "enter into a comprehensive confidential settlement agreement and release, incorporating the terms of this

mediated settlement agreement, including full and final mutual releases, within thirty . . . days from the date of mediation." (Mediated Settlement Agreement ¶ 8). Defendants represented in their briefing and at the May 5th hearing that, in compliance with this provision of the agreement, they sent Plaintiff a draft "Confidential Compromise Settlement Agreement and Mutual Release" on March 7th (the "March 7th Agreement") that they believed adequately incorporated the terms of the Mediated Settlement Agreement. (*See* Confidential Compromise Settlement Agreement and Mutual Release, Defs.' App. in Supp. of 3d Unopposed Mot. Extend Time, Ex. A-2). After a series of revisions and multiple requests for extension of time to submit final papers, the parties reached a impasse because Plaintiff refused to agree to the March 7th Agreement or any subsequent revisions. Defendants moved to enforce the March 7th Agreement, culminating in the May 5th hearing.

At the hearing, Defendants asked the Court to enforce the original March 7th draft. In order to ascertain whether it should enforce the original Mediated Settlement Agreement, as incorporated into the March 7th Confidential Compromise Settlement Agreement and Mutual Release, the Court directed the Plaintiff to state—line-by-line and provision-by-provision—the aspects in which the March 7th Agreement materially diverged from the Mediated Settlement Agreement. In a tedious exchange, the Plaintiff raised seventeen objections to the March 7th Agreement. But as the Court noted on the record at the hearing, most of these objections were simply attempts by the Plaintiff to add language to the final Agreement neither contained in nor contemplated by the Mediated Settlement Agreement. As to all of Plaintiff's other objections—save one—the Court noted at the hearing, and hereby finds, that the verbiage to which Plaintiff objects, contained in the March 7th

Agreement, is not "materially different"[1] from the language and terms of the Mediated Settlement Agreement.[2] Finally, as to Plaintiff's objection concerning the language of the release provisions, counsel for Defendants agreed on the record at the May 5th hearing to substitute the language proposed by Plaintiff into the March 7th Agreement.[3]

In sum, the Court finds that Plaintiff agreed to enter into a comprehensive settlement agreement and release that incorporated the terms of the Mediated Settlement Agreement. The Court further finds that Plaintiff refused to sign any of the comprehensive settlement agreements offered him by Defendants, including the March 7th Agreement and that the March 7th Agreement does not materially differ[4] from the Mediated Settlement Agreement. Accordingly, Defendants are hereby **DIRECTED** to retransmit the March 7th Agreement with the modified release language, along with all necessary attachments (including the Agreed Final Judgment), to the Plaintiff, **on or before Thursday, May 12, 2011**. Plaintiff is then **DIRECTED** to execute the amended March 7th Agreement (as well as all attachments) **on or before Wednesday, May 18, 2011**. The parties are directed to submit their signed Agreed Final Judgment to the Court **on or before Monday, May 23,**

---

[1] Many of these objections were to boilerplate language routinely contained in settlement agreements.

[2] For example, at one point Plaintiff requested that certain language from the Mediated Settlement Agreement be included in ¶ 3(a). Defendants then pointed out that the language Plaintiff was requesting appeared verbatim in the same "Terms of the Agreement" section in ¶ 3(g).

[3] Counsel for the Defendants did not take the position, nor did the Court find, that the release language originally contained in the March 7th was materially different from that contemplated by the Mediated Settlement Agreement.

[4] In finding that the Mediated Settlement Agreement and March 7th Agreement do not materially differ, the Court does not purport to state that they are identical, merely that the differences between the two are minor in nature. *See Weaver*, 2010 WL 1904561, at *2; *Nwachukwu v. St. Louis Univ.*, 114 F. App'x 264, 265-66 (8th Cir. 2004).

2011. In the event Plaintiff fails to comply with the directives of this Order, Defendants may once again seek relief (including sanctions) in this Court.

SO ORDERED.

DATED May 9, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE